IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re DITECH COMMUNICATIONS CORP.
SECURITIES LITIGATION

No. C 05-02406 JSW

This Document Relates To:

ALL ACTIONS.

**NOTICE OF TENTATIVE RULING AND QUESTIONS**

/

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING **TENTATIVE** RULING AND QUESTIONS FOR THE HEARING SCHEDULED ON JUNE 9, 2006:

The Court **tentatively GRANTS** Defendants' motion to dismiss and **RESERVES RULING** on whether to provide Plaintiffs leave to amend, and the Court **tentatively DENIES** Defendants' motion to certify for interlocutory appeal.  The Court has reviewed the parties' papers and, thus, does not wish to hear the parties reargue matters addressed in those pleadings.  If the parties intend to rely on authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel of these authorities reasonably in advance of the hearing and to make copies available at the hearing.  If the parties submit such additional authorities, they are ORDERED to submit the citations to the authorities only, without argument or additional briefing.  *C.f.* N.D. Civil Local Rule 7-3(d).  The parties will be given the opportunity at oral argument to explain their reliance on such authority.

The parties shall each have 25 minutes to address the following questions:

(1) Plaintiffs allege that the two customers in Asia whom Defendants announced placed orders of over $5 million were not obligated to purchase the services under these orders. (Amended Class Action Complaint ("ACAC"), ¶ 4(a).)

    (a) What support, if any, do Plaintiffs have for the allegation that these customers were not obligated to purchase the services under the orders?

    (b) Do Plaintiffs contend that Ditech did not actually have orders worth more than $5 million dollars for VQA from two customers in Asia when it announced such orders on August 24, 2004?

    (c) As support for Plaintiffs' contention that Defendants' representation regarding the VQA orders from the Asian customers was false when made, Plaintiffs point to the following statement made by Montgomery during a conference call on November 3, 2004 : "I'm happy to say that I don't have a loss report associated with VQA. I have a delay report that suggests there are other things we need to do to win the business." (Opp. at 9.) However, this statement was made in response to a question regarding Ditech's *domestic* VQA trials. (North Declaration, Ex. B.) Do Plaintiffs have any non-public information held by Defendants which indicate that there were things Ditech need to do to "win" the orders from the Asian customers or that these orders were doubtful at the time Defendants announced that the orders had been secured?

    (d) Do Plaintiffs have any other information which demonstrates the representation that Ditech had obtained these orders were false when made?

(2) Plaintiffs allege that Defendants made the following statement on November 3, 2004: "In August, we announced that we'd secured orders in excess of $5 million from customers in Asia. During the Q1 conference call, we indicated that we though we would ship $2 to $3 million in VQA in the second quarter. Due to management changes within the largest of these firms, subsequent to booking the order, the delivery schedule changed. The customer has now reconfirmed the new shipping schedule and we're taking steps to ensure smooth delivery of these orders in the second half of this fiscal year." (ACAC, ¶ 36.)

    (a) What information, if any, do Plaintiffs have which demonstrates that the delay in these orders up to this point was not due to management changes within the largest of the two Asian customers and that these management changes occurred after the order was booked and announced by Defendants?

2

    (b)    What information, if any, do Plaintiffs have which indicates that the statement that, by November 3, 2004, the customer had reconfirmed the new shipping schedule and that Ditech was taking steps to ensure smooth delivery of these orders in the second half of the fiscal year was false?

(3) Plaintiffs allege that on February 17, 2005, Montgomery stated: "The Nextel-Sprint merger is actually, we think, quite good for us in that the key strategic people on the technical side are actually going to be the Nextel players, and this is what we've seen publicly announced. So we think that's positive, but we also have an account team calling on Sprint directly in Kansas City, which we're hopeful the 2 points lead to the right end." (ACAC, ¶ 42.)

    (a)    Do Plaintiffs have any information indicating the statement that "the key strategic people on the technical side are actually going to be the Nextel players" was false when made? If so, do Plaintiffs have any information indicating Montgomery knew this statement was false when he made it?

    (b)    Do Plaintiffs have any information indicating Defendants has access to material non-public information by February 17, 2005 which indicated that the merger was likely going to hurt Ditech's business?

(4) In light of the fact that Montgomery sold 320,000 Ditech stocks in the four months before the purported class period began, on what basis do Plaintiffs contend that his sale of 225,000 stocks during the four months in the purported class period was "unusual" or "suspicious"?

(5) Given that neither Montgomery nor Tamblyn sold any Ditech stock during the purported class period after the allegedly false statement regarding the merger was made on February 17, 2005, do Plaintiffs have any additional facts which would support a strong inference of inference of scienter with respect to the Nextel-Sprint merger?

(6) Plaintiffs allege that Tamblyn did not sell Ditech any stock in October 2003, but their Complaint is silent with respect to whether he sold any between October 2003 and October 2004. What Ditech stocks, if any, did Tamblyn sell between October 2003 and October 2004?

(7) Do Plaintiffs have any information in addition to what they alleged in their complaint that would support a strong inference of scienter with respect to the VQA orders?

(8) Defendants argue that Montgomery sold his Ditech stocks pursuant to an automatic selling plan, but do not submit any documents from which the Court may take judicial notice indicating when the plan went into effect and what the plan provides. If Plaintiffs

3

are given leave to amend, do Defendants have documents of which the Court may take judicial notice which would provide this information?

(9) Do the parties have anything further to add?

Dated: June 8, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

4